**State of Oregon**
**Oregon Investment Council**

**General Investment Consulting Services**

This Contract for General Investment Consulting Services (this "Contract") is entered into as of January 1, 2021 (the "Effective Date"), by and between the State of Oregon ("State"), acting through its Oregon Investment Council ("Council" or "Client"), and Meketa Investment Group Inc., a Massachusetts Corporation ("Consultant").

Consultant's Contract Administrator for this Contract is:

Lisa M. Rubin, Principal, Director of Marketing & Communications
100 Lowder Brook Drive, Suite 1100
Westwood, MA 02090
Phone: (781) 471-3500
lrubin@mekata.com

Client's Contract Administrator for this Contract is:

Contract Administrator David Randall,
Chief Investment Operating Officer
Investment Division
16290 SW Upper Boones Ferry Rd
Tigard, OR 97224
Phone: (503) 431-7902
David.Randall@ost.state.or.us

Either party may change its Contract Administrator by providing the other notice in compliance with Section 17.6 of this Contract.

**Recitals**

**A.** The Council is authorized by ORS 293.731 to formulate policies for the investment and reinvestment of moneys in a series of State funds, including the Oregon Public Employees' Retirement Fund, a trust fund for public employees of the State of Oregon (collectively, the "Fund").

**B.** The Treasurer of the State of Oregon is the "Investment Officer" for the Council and, in that capacity, performs functions as authorized or required by law and, consistent with law, by the Council, including, without limitation, the acquisition, retention, management and disposition of investments in the Fund. Under the direction of the State Treasurer, the Chief Investment Officer ("CIO") and the staff of the Office of the Oregon State Treasurer (*"Treasury" or "OST"*) assist the State Treasurer in carrying out these functions.

**C.** The Council may contract for investment counseling services to the Investment Officer, the CIO and Treasury staff, to assist the Investment Officer in carrying out its fiduciary duties with respect to investment decisions and activities and the administration of Fund monies. The CIO and Treasury staff will be Consultant's primary contact in regard to the services rendered to the Council under this Agreement.

**D.** The Council desires to avail itself of the counseling services of Consultant with respect to the General Investment. Consultant is willing, upon the terms and conditions set forth herein, to provide such services.

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**1. Contract Term and Renewals.**

Unless extended or terminated earlier in accordance with its terms, this Contract terminates on the third anniversary of the Effective Date (the "Expiration Date"). Client and Consultant shall have the option, by a written amendment to this Contract signed by both parties, to extend the term of this Contract beyond the Expiration Date for two (2) years. Client and Consultant may thereafter, by a written amendment to this Contract signed by both parties, extend the term of this Contract for an additional two (2) years. The termination of this Contract will not extinguish or prejudice Client's right to enforce this Contract with respect to any default by Consultant that has not been cured.

**2. Contract Documents.** This Contract consists of the following documents, which are listed in descending order of precedence:

**2.1.** This Contract less all exhibits;

**2.2.** Exhibit A (Statement of Work);

**2.3.** Exhibit B (Required Insurance),

**2.4.** Exhibit C (Key Persons), and

**2.5.** Exhibit D (Independent Contractor Certification),

The foregoing documents and Exhibits are attached hereto and made a part of the Contract by this reference.

**3. Engagement of Consultant.**

**3.1. Engagement.** Client hereby engages Consultant and Consultant hereby accepts such engagement and agrees to provide Client, the Investment Officer, and the Fund, during the term of this Agreement, with the services described in Exhibit A (the "Statement of Work") with respect to the Fund (the "Services"). Consultant shall perform the Services and deliver to the Office of the Oregon State Treasurer ("Agency") the deliverables ("Deliverables") set forth in the Statement of Work. The Statement of Work includes the delivery schedule for the Deliverables

and Services. Consultant shall perform the Services in accordance with the terms and conditions of this Contract.

**3.2. Additional Services.** If and to the extent that Client shall request Consultant, or any officer or employee thereof, to render special services other than those required to be rendered by Consultant hereunder, such additional services shall be furnished and compensated separately on terms to be agreed upon between such party and Client from time to time.

**4. Compensation.**

**4.1. Fees**. Client shall pay an annual fee to Consultant for services to be rendered under the Agreement as follows:

| | |
|---|---|
| Year One | $450,000.00 |
| Year Two | $450,000.00 |
| Year Three | $450,000.00 |
| Optional | |
| Year Four | $475,000.00 |
| Year Five | $490,000.00 |
| Optional | |
| Year Six | $505,000.00 |
| Year Seven | $520,000.00 |

**4.2. Payments**. The applicable per annum fee shall be due and payable in arrears in four (4) equal quarterly installments at the end of each fiscal quarter, after presentation to Client, and Client's approval, of a written invoice. The quarterly installment for any partial fiscal quarter falling within the term of this Agreement will be prorated, based on the number of days of the term falling within the quarter. Payments to Consultant are subject to ORS 293.462.

**4.3. Expenses.** The fees described in Section 4.1 are the full and complete compensation for Consultant's delivery of the Services under this Agreement. Consultant shall bear the cost of its own administrative and other expenses, including employment expenses, which include but are not limited to salaries, wages, payroll taxes, cost of employee benefit plans and temporary help expenses, rent, telephone, utilities and other office expenses, travel and travel related expenses, Consultant's own legal, accounting, and auditing expenses, and any other or miscellaneous expenses relating to Consultant's delivery of Services under this Agreement.

**4.4. Funds Available and Authorized**. Consultant will not be compensated for Services performed under this Contract by any agency or department of the State of Oregon other than Client. Client believes it has sufficient funds currently available and authorized for expenditure to make payments under this Contract within Client's biennial appropriation or limitation. Consultant understands and agrees that Client's payments under this Contract are contingent on Client receiving appropriations, limitations, or other expenditure authority sufficient to allow Client, in the exercise of its reasonable administrative discretion, to continue to make payments under this Contract.

**5. Consultant's Personnel.**

**5.1. Key Persons**. Consultant acknowledges and agrees that Client selected Consultant, and is entering into this Contract, because of the special qualifications of Consultant's key persons identified in Exhibit C (each a "Key Person" and, together, "Key Persons"). The Services under this Contract shall be provided primarily by the Key Persons and neither Consultant nor a Key Person may delegate the primary delivery of the Services to other Consultant employees, subcontractors or agents without first obtaining the written consent of Client. Further, Consultant may not re-assign or transfer a Key Person to other duties or positions such that the Key Person is no longer available to provide the Client with the required expertise, experience, judgment, and personal attention, without first obtaining Client's written consent to such re-assignment or transfer, which Client will not unreasonably withhold or delay. Notwithstanding the foregoing, Consultant may replace a Key Person in the event the Key Person is no longer available due to circumstances beyond Consultant's reasonable control, such as death, illness, or termination of employment with Consultant. In the event Consultant requests that Client approve a re-assignment or transfer of a Key Person, or if Consultant must replace a Key Person, Client may interview, review the qualifications of, and approve or reject the proposed replacement for the Key Person. Any such replacement must have substantially equivalent or better qualifications than the Key Person being replaced. Any replacement personnel approved by Client in writing (email acceptable) will thereafter be deemed a Key Person for purposes of this Contract, and Exhibit C will be deemed amended to include such Key Person.

**5.2. State Premises**. Consultant and Consultant staff shall comply with all policies, rules, procedures, and regulations established by Client and the State for access to and activities in and around premises controlled by Client or any other agency of the State.

**6. Independent Contractor; Responsibility For Taxes And Withholding**

**6.1. Independent Contractor.** Consultant shall perform all Services as an independent contractor. Client reserves the right (i) to determine and modify the delivery schedule for the Services and (ii) to evaluate the quality of the Services; however, Client may not and will not control the means or manner of Consultant's performance. Consultant is responsible for determining the appropriate means and manner of performing the Services. This Contract is not intended and shall not be construed to create the relationship of agent, servant, employee, partnership, joint venture or association, as between Client and Consultant.

**6.2. No Conflicts**. Consultant, by signature to this Contract, represents and warrants that Consultant's performance of the Services under this Contract creates no potential or actual conflict of interest as defined by ORS 244; and no statutes, rules or regulations of any State of Oregon or federal agency for which Consultant currently performs work would prohibit Consultant from performing the Services under this Contract.

**6.3. Affiliation**. Consultant understands and agrees that it is not an "officer," "employee," or "agent" of the State of Oregon, as those terms are used in ORS 30.265 or otherwise.

**6.4. Taxes and Benefits**. Consultant is responsible for all federal or state taxes applicable to compensation or payments paid to Consultant under this Contract and, unless required by applicable law, Client will not withhold from such compensation or payments any amount to cover Consultant's federal or state tax obligations. Consultant is not an employee of the State of Oregon and is not a contributing member of the Oregon Public Employees Retirement System.

Consultant is not eligible for any social security, unemployment insurance or workers' compensation benefits from compensation or payments paid to Consultant under this Contract, except as a self-employed individual.

7. **Subcontracts, Successors, And Assignments**

7.1. **Subcontracts.** Consultant shall not enter into any subcontracts for any of the Services required by this Contract without Client's prior written consent. In addition to any other provisions Client may require, Consultant shall include in any permitted subcontract under this Contract provisions to ensure that Client will receive the benefit of subcontractor's performance as if the subcontractor were Consultant. Client's consent to any subcontract does not relieve Consultant of any of its duties or obligations under this Contract.

7.2. **Successors and Assigns.** The provisions of this Contract are binding upon and inure to the benefit of the parties to this Contract, their respective successors, and permitted assigns, if any.

7.3. **No Assignment.** Consultant shall not assign or transfer any of its rights or delegate its obligations under this Contract without Client's prior written consent.

8. **Representations and Warranties.**

8.1. **Consultant's General Representations and Warranties.** Consultant represents and warrants to Client that:

8.1.1. Consultant has the power and authority to enter into and perform this Contract;

8.1.2. This Contract, when executed and delivered, is a valid and binding obligation of Consultant enforceable in accordance with its terms;

8.1.3. Consultant has completed, obtained and performed all registrations, filings, approvals, authorizations, consents, or examinations required by any government or governmental authority for its activities under this Agreement and shall, at all times during the term of this Contract, be qualified, professionally competent, and duly licensed to perform the Services;

8.1.4. Consultant prepared its proposal related to this Contract, if any, independently from all other proposers, and without collusion, fraud, or other dishonesty; and

8.1.5. Consultant (to the best of Consultant's knowledge, after due inquiry), for a period of no fewer than six calendar years preceding the Effective Date, faithfully has complied with:

8.1.5.1. All tax laws of this state, including but not limited to ORS 305.620 and ORS chapters 316, 317, and 318;

8.1.5.2. Any tax provisions imposed by a political subdivision of this state that applied to Consultant, to Consultant's property, operations, receipts, or income, or to Consultant's performance of or compensation for any work performed by Consultant;

8.1.5.3. Any tax provisions imposed by a political subdivision of this State that applied to Consultant, or to goods, services, or property, whether tangible or intangible, provided by Consultant;

8.1.5.4. Any rules, regulations, charter provisions, or ordinances that implemented or enforced any of the foregoing tax laws or provisions; and

8.1.6. Consultant has no undisclosed liquidated and delinquent debt owed to the State or any department or agency of the State; and

8.1.7. No person or selling agency has been employed or retained by Consultant to solicit or secure this Contract upon any arrangement or understanding for a commission, percentage, brokerage, contingent or other fee arrangement.

**8.2. Consultant's Performance Representations and Warranties.** Consultant represents and warrants to Client that:

8.2.1. Consultant has the skill and knowledge possessed by well-informed members of its industry, trade or profession and Consultant shall apply that skill and knowledge with care and diligence to perform the Services in a professional manner and in accordance with the highest standards prevalent in Consultant's industry, trade or profession;

8.2.2. The Services and each Deliverable delivered by Consultant pursuant to the Services will materially comply with any service descriptions, specifications, standards or requirements set forth in this Contract;

8.2.3. Except as otherwise provided in this Contract (including Section 9), Consultant shall transfer all Deliverables to Client free and clear of any and all restrictions on or conditions of transfer, modification, licensing, sublicensing, direct or indirect distribution, or assignment, and free and clear of any and all liens, claims, mortgages, security interests, liabilities, and encumbrances of any kind; and

8.2.4. Except as otherwise set forth in this Contract, any subcontractors performing work for Consultant under this Contract have assigned all of their rights in the Deliverables to Consultant or Client and no third party has any right, title or interest in any Deliverables supplied to Client under this Contract.

**8.3. Fiduciary Responsibility.** Consultant represents and warrants to Client that:

8.3.1. **Prudent Expert Standard.** Consultant has the requisite experience, expertise and resources to fully and properly perform all of its duties and obligations set forth herein. Consultant represents itself as being possessed of greater knowledge and skill than the average person and is under a duty to exercise a skill greater than that of an ordinary person and the manner in which its performance hereunder is handled will be evaluated in light of Consultant's superior skill. Consultant acknowledges it is a fiduciary under this Contract and as a fiduciary it shall discharge each of its duties and exercise each of its powers, with the care, skill, prudence and diligence under the circumstances that a prudent expert acting in a like capacity and familiar with such matters would use in the conduct of any enterprise of like character with like aims.

8.3.2. **Duty to the Fund.** Consultant shall discharge its duties hereunder with respect to the Fund solely in the interest of the members, retirees and beneficiaries of the Fund. Consultant shall not in any capacity: (a) act in any transaction involving the Fund on behalf of a party or represent a party whose interests are adverse to the interests of the Fund or its members and beneficiaries; or (b) receive any consideration for its personal account from any party dealing with the Fund in connection with a transaction involving the assets of the Fund.

8.3.3. **Conflict of Interest.** No employee or fiduciary of Client or State of Oregon employee whose position enables such person to influence the award of this Agreement or any competing agreement, and no spouse or economic dependent of such person is or shall be employed in any capacity by Consultant herein, or does or shall have any direct or indirect financial interest in this Contract.

**8.4. Warranties cumulative**. The warranties set forth in Section 8 are in addition to, and not in lieu of, any other warranties set forth elsewhere in this Contract.

**9. Ownership of Work Product.**

**9.1. Definitions**. As used in this Section 9, and elsewhere in this Contract, the following terms have the meanings set forth below:

9.1.1. "Consultant Intellectual Property" means any intellectual property owned by Consultant and developed independently from the Services.

9.1.2. "Third Party Intellectual Property" means any intellectual property owned by parties other than Client or Consultant.

9.1.3. "Work Product" means everything that is originally made, conceived, discovered, or reduced to practice by Consultant or Consultant's subcontractors or agents (either alone or with others) pursuant to this Contract, including every invention, modification, discovery, design, development, customization, configuration, improvement, process, work of authorship, documentation, formula, datum, technique, know how, secret, or intellectual property right whatsoever or any interest therein (whether patentable or not patentable or registerable under copyright or similar statutes or subject to analogous protection).

**9.2. Original Works**. All Work Product created by Consultant pursuant to the Services, including derivative works and compilations of Work Product, and whether or not such Work Product is considered a work made for hire or an employment to invent, is the exclusive property of Client. Client and Consultant agree that such Work Product is "work made for hire" of which Client is the author within the meaning of the United States Copyright Act. If for any reason the Work Product is not "work made for hire," Consultant hereby irrevocably assigns to Client any and all of its rights, title, and interest in all Work Product, whether arising from copyright, patent, trademark, trade secret, or any other state or federal intellectual property law or doctrine. Upon Client's reasonable request, Consultant shall execute such further documents and instruments necessary to fully vest such rights in Client. Consultant forever waives any and all rights relating to Work Product, including without limitation, any and all rights arising under 17 USC §106A or any other rights of identification of authorship or rights of approval, restriction or limitation on use or subsequent modifications.

9.3. **License in Consultant Intellectual Property**. In the event that a Deliverables delivered by Consultant under this Contract is or is a derivative work based on Consultant Intellectual Property, or is a compilation that includes Consultant Intellectual Property, Consultant hereby grants to Client an irrevocable, non-exclusive, perpetual, royalty-free license to use, reproduce, prepare derivative works based upon, distribute copies of, perform and display the pre-existing elements of the Consultant Intellectual Property employed in the Deliverables, and to authorize others to do the same on Client's behalf.

9.4. **License in Third Party Intellectual Property**. In the event that a Deliverables delivered by Consultant under this Contract is or is a derivative work based on Third Party Intellectual Property, or is a compilation that includes Third Party Intellectual Property, Consultant shall secure on the Client's behalf and in the name of the Client an irrevocable, non-exclusive, perpetual, royalty-free license to use, reproduce, prepare derivative works based upon, distribute copies of, perform and display the pre-existing elements of the Third Party Intellectual Property employed in the Deliverables, and to authorize others to do the same on Client's behalf.

9.5. **No Rights**. Except as expressly set forth in this Contract, nothing in this Contract may be construed as granting to or conferring upon Consultant any right, title, or interest in any intellectual property that is now owned or subsequently owned by Client. Except as expressly set forth in this Contract, nothing in this Contract may be construed as granting to or conferring upon Client any right, title, or interest in any Consultant Intellectual Property that is now owned or subsequently owned by Consultant.

9.6. **Marks**. Neither party grants the other the right to use its trademarks, trade names, service marks or other designations in any promotion or publication without prior written consent. Each party grants only the licenses and rights specified in this Contract.

9.7. **Competing Services**. Subject to the provisions of Section 8.3, this Section 9, and Consultant's obligations with respect to Confidential Information, including as defined in Section 10, nothing in this Contract limits or restricts the right of Consultant to engage in other consulting relationships or to render services to other public or private profit or not-for-profit entities; provided, however, Consultant shall act with respect to any transaction involving any investment of Client only under this Agreement and shall not receive any remuneration in connection with such a transaction related to Client's investment except under this Agreement. If Consultant enters into any such agreement with any third party, Consultant shall disclose to Client the existence of such agreement and the identity of the parties promptly after entering into any such agreement.

**10. Confidential Information.**

**10.1. Confidential Information**. Consultant acknowledges that it and its employees, officers, directors, agents or subcontractors (collectively, "Consultant Staff") may, in the course of performing the Services under this Contract, be exposed to or acquire information that is confidential to Client. Any and all information of any form (including but not limited to records, files, papers, materials, documents, and communications in written, verbal, oral and electronic form) that Consultant or any Consultant Staff may come into contact with or that is obtained by Consultant or Consultant Staff in the performance of this Contract, including but not limited to all information relating to financial, accounting and investment matters of Client and all

information received from Client's investment managers or other third party contractors, shall be considered for the purposes of this Contract the confidential information of Client ("Confidential Information"). Consultant shall, and shall cause Consultant Staff to treat any reports or other documents or items (including software) that result from the use of the Confidential Information in the same manner as the Confidential Information. Confidential Information does not include information that (i) is furnished by Client to others without restrictions similar to those imposed by this Contract; (ii) is rightfully in Consultant's possession without the obligation of nondisclosure prior to the time of its disclosure under this Contract; (iii) is obtained from a source other than Client or Client's employees, agents or contractors, without the obligation of confidentiality; (iv) is disclosed with the written consent of Client; (v) is independently developed by Consultant or Consultant Staff who can be shown to have had no access to the Confidential Information; or (vi) is generally available to and known by the public (other than as a result of its disclosure by Consultant in breach of this Contract).

**10.2.** **Non-Disclosure**. Consultant shall hold, and shall cause Consultant Staff to hold, all Confidential Information in confidence, using not less than reasonable care and in no event less than the care used by Consultant to protect its own confidential information), and shall not copy, reproduce, sell, assign, license, market, transfer, distribute, or otherwise dispose of, give, make available or disclose, in whole or in part, directly or indirectly, Confidential Information to third parties (other than its authorized subcontractors), or use Confidential Information for any purposes whatsoever other than the provision of Services to Client hereunder, and shall advise Consultant Staff of their obligations to keep Confidential Information confidential. For purposes of Confidential Information received from Client's investment managers or other third party contractors, Consultant shall be held to the same confidentiality standards to which Client is bound pursuant to Client's agreements with such investment managers or other third party contractors, with respect to that Confidential Information. Without limiting the generality of the foregoing, Consultant shall advise Client immediately in the event Consultant learns or has reason to believe that any person who has had access to Confidential Information has violated or intends to violate the terms of this Contract, and Consultant will at its expense cooperate with and assist Client in seeking injunctive or other equitable relief in the name of Client or Consultant against any such person. Consultant shall not at any time during or after the term of this Contract, except as directed by Client, disclose, directly or indirectly, any Confidential Information to any person, except in accordance with this Contract. Upon expiration or termination of this Contract or at Client's request, Consultant shall deliver to Client all documents, papers, and other matter in Consultant's possession that are Confidential Information and shall remove Confidential Information from its notes, analysis and other derivative materials. Notwithstanding the foregoing and unless otherwise specified in this Contract, Consultant may keep one copy of such Confidential Information necessary for quality assurance, audits and evidence of performance of the Services.

**10.3.** **Confidentiality Policies**. Consultant shall, upon Client's request, provide its policies and procedures for safeguarding Confidential Information to Client for Client's review and consent. Such policies must address information conveyed in oral, written, and electronic format and include procedures for how Consultant will respond when a violation or possible violation occurs.

**10.4.** **Material Breach and Injunctive Relief**. Any disclosure of Confidential Information contrary to this Section 10 will constitute a material breach of this Contract by Consultant.

Consultant acknowledges that breach of this Section 10, including disclosure of any Confidential Information, will cause irreparable injury to Client that is inadequately compensable in damages. Accordingly, Client may seek and obtain injunctive relief against the breach or threatened breach of the foregoing undertakings, in addition to any other legal remedies that may be available. Consultant acknowledges and agrees that the covenants contained herein are necessary for the protection of the legitimate business interests of Client and are reasonable in scope and content.

**10.5.** **Publicity**. Consultant may disclose the existence of this Agreement to prospective clients, if asked. Consultant, its employees, agents and subcontractors shall not publish or disseminate commercial advertisements, press releases, opinions or feature articles using the name of the Client, Fund, the Investment Officer, CIO or Treasury staff, or any other entity of the State of Oregon, without the prior written consent of Client.

**11. Indemnity by Consultant.**

**11.1.** **Claims**. Consultant shall save, hold harmless, and indemnify the State of Oregon, Client, the State Treasurer, and their officers, employees and agents from and against all third party claims, suits, actions, losses, damages, liabilities, costs (including attorneys' fees) and expenses (collectively, "Claims") of any nature whatsoever resulting from, arising out of, or relating to the activities of Consultant or its officers, employees, subcontractors, or agents under this Contract, including but not limited to, unauthorized disclosure of Confidential Information or other breach of its obligations under Section 10, professional malfeasance, infringement of intellectual property rights, intentional, willful, or wanton wrongful acts, and acts outside the scope of Services set forth in this Contract.

**11.2.** **[Section Intentionally Blank]**

**11.3.** **Damages to State Property and Employees**. Consultant is liable for all Claims for personal injury, including death, damage to real property and damage to tangible and intangible personal property of the State of Oregon or any of its employees, subcontractors or agents resulting from, arising out of, or relating to the intentional, reckless or negligent acts or omissions of Consultant or its officers, employees, subcontractors, or agents under this Contract

**11.4.** **[Section Intentionally Blank]**

**12. Limitation of Liabilities.**

EXCEPT FOR LIABILITY TO THIRD PERSONS ARISING OUT OF OR RELATED TO (i) SECTION 10, OR (ii) SECTION 11, NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, LOST SAVINGS, OR PUNITIVE, INDIRECT, EXEMPLARY, CONSEQUENTIAL, OR INCIDENTAL DAMAGES.

**13. Insurance.** Consultant shall maintain insurance as set forth in Exhibit B.

**14. Default; Remedies; Termination.**

**14.1.** **Default by Consultant**. Consultant will be in default under this Contract if:

14.1.1. Consultant institutes or has instituted against it insolvency, receivership or bankruptcy proceedings, makes an assignment for the benefit of creditors, or ceases doing business on a regular basis; or

14.1.2. Consultant no longer holds a license or certificate that is required for Consultant to perform its obligations under the Contract and Consultant has not obtained such license or certificate within 14 calendar days after Client's notice or such longer period as Client may specify in such notice; or

14.1.3. Consultant commits any material breach or default of any covenant, warranty, obligation, certification, or agreement under this Contract, fails to perform the Services under this Contract within the time specified herein or any extension thereof, or so fails to pursue the Services as to endanger Consultant's performance under this Contract in accordance with its terms, and such breach, default or failure is not cured within 14 calendar days after Client's notice, or such longer period as Client may specify in such notice; or

14.1.4. Consultant has liquidated and delinquent debt owed to the State of Oregon or any department or agency of the State.

**14.2.** **Client's Remedies for Consultant's Default**. In the event Consultant is in default under Section 14.1, Client may, at its option, pursue any or all of the remedies available to it under this Contract and at law or in equity, including, but not limited to:

14.2.1. Termination of this Contract under Section 14.6.2; or

14.2.2. Withholding all monies due for Services and Deliverables that Consultant has failed to deliver within any scheduled completion dates or has performed inadequately or defectively; or

14.2.3. Initiation of an action or proceeding for damages, specific performance, or declaratory or injunctive relief; or

14.2.4. Exercise of its right of setoff, and withholding of amounts otherwise due and owing to Consultant, without penalty; or

14.2.5. Undertaking collection by administrative offset, or garnishment if applicable, of all monies due for Services and Deliverables to recover liquidated and delinquent debt owed to the State of Oregon or any department or agency of the State. Offsets or garnishment may be initiated after the Consultant has been given notice if required by law.

**14.3.** **Remedies Cumulative**. The remedies set forth in Section 14.2 are cumulative to the extent the remedies are not inconsistent, and Client may pursue any remedy or remedies singly, collectively, successively or in any order whatsoever. If a court determines that Consultant was not in default under Sections 14.1, then Consultant will be entitled to the same remedies as if this Contract was terminated pursuant to Section 14.6.1.

**14.4.** **Default by Client**. Client will be in default under this Contract if:

14.4.1. Client fails to pay Consultant any amount pursuant to the terms of this Contract, and Client fails to cure such failure within 30 calendar days after Consultant's notice or such longer period as Consultant may specify in such notice; or

14.4.2. Client commits any material breach or default of any covenant, warranty, or obligation under this Contract, and such breach or default is not cured within 30 calendar days after Consultant's notice or such longer period as Consultant may specify in such notice.

**14.5.** **Consultant's Remedies**. In the event Client terminates this Contract under Section 14.6.1, or is in default under Section 14.4, and whether or not Consultant elects to exercise its right to terminate the Contract under Section 14.6.3, Consultant's sole monetary remedy will be a claim for the annual sum designated for performance hereunder multiplied by a percentage, the numerator of which is the number of months of Services performed hereunder and the denominator of which is the number 12, less previous amounts paid and any claim(s) that Client has against Consultant. In no event will Client be liable to Consultant for any expenses related to termination of this Contract or for anticipated profits. If previous amounts paid to Consultant exceed the amount due to Consultant under this Section 14.5, Consultant shall pay immediately any excess to Client upon written demand. Notwithstanding the foregoing, Consultant's sole remedy for Client's failure to furnish data and information as required by Section B of Exhibit A is a right to delay performance of those Services (or portions thereof) dependent on such data or information until such data or information is furnished.

**14.6.** **Termination.**

14.6.1. **Client's Right to Terminate at its Discretion**. Client may terminate this Contract**:**

14.6.1.1. Upon 90 calendar days' prior written notice by Client to Consultant;

14.6.1.2. Immediately upon written notice by Client to Consultant if Client fails to receive funding, appropriations, limitations, allotments or other expenditure authority at levels sufficient to pay for the Services or Work Products; or

14.6.1.3. Immediately upon written notice by Client to Consultant if federal or state laws, regulations, or guidelines are modified or interpreted in such a way that the Client's purchase of the Services or Work Products under this Contract is prohibited or Client is prohibited from paying for such Services or Work Products from the planned funding source.

14.6.2. **Client's Right to Terminate for Cause.** In addition to any other rights and remedies Client may have under this Contract, Client may terminate this Contract immediately upon written notice by Client to Consultant, or at such later date as Client may establish in such notice, if Consultant is in default under Section 14.1.

14.6.3. **Consultant's Right to Terminate for Cause.** Consultant may terminate this Contract immediately upon written notice to Client, or at such later date as Consultant may establish in such notice, if Client is in default under Section 14.4 or if Client notifies Consultant that Client has failed to receive funding, appropriations, limitations, allotments or other expenditure authority at levels sufficient to pay for the Services or Work Products.

**14.7.** **Return of Property**. Upon termination of this Contract for any reason whatsoever, Consultant shall immediately deliver to Client all of Client's property (including without limitation any Services or Work Products for which Client has made payment in whole or in part) that is in the possession or under the control of Consultant in whatever stage of development and form of recordation such Client property is expressed or embodied at that time.

**14.8.** **Effect of Termination**. Upon receiving a notice of termination of this Contract, Consultant shall immediately cease all activities under this Contract, unless Client expressly directs otherwise in such notice of termination. Upon Client's request, Consultant shall surrender to anyone Client designates, all documents, research or objects or other tangible things needed to complete the Services and the Deliverables.

**15. Compliance with Law.**

**15.1.** **Investment Adviser.** Consultant represents to Client that Consultant is duly registered and in good standing as an investment adviser with the Securities and Exchange Commission under the Investment Advisers Act of 1940 and Consultant warrants that Consultant will keep such registration current and in good standing throughout the term of this Agreement. As an investment adviser, Consultant is a fiduciary with respect to the performance of its duties hereunder for Client and the Fund, and such duties include, without limitation, the duty to affirmatively and promptly disclose to Client, within twenty-one (21) days of learning of, information which may negatively impact either the investments of Client, the Fund, or both, or the reputation or the ability of Consultant to continue to provide the Services described in this Contract. Such information shall include, but not be limited to:

15.1.1 Turnover of any of Consultant's key investment professionals;

15.1.2 Consultant's investment philosophy or process for delivery of Services to Client under this Contract;

15.1.3 Changes in Consultant's organizational structure; and

15.1.4 A description of:

15.1.4.1 any pending lawsuits against or which might materially affect Consultant, or

15.1.4.2 any regulatory matters or issues which affect Consultant.

Consultant and its agents' actions shall at all times conform to the requirements for investment advisors and investments under application law.

**15.2.** **Compliance with Law Generally.** Consultant shall comply, and cause all subcontractors to comply with all federal, state and local laws, regulations, executive orders and ordinances applicable to this Contract and the performance of the Services. Without limiting the generality of the foregoing, Consultant expressly agrees to comply with the following laws, regulations and executive orders to the extent they are applicable to this Contract: (i) Titles VI and VII of the Civil Rights Act of 1964, as amended; (ii) Title V and Sections 503 and 504 of the Rehabilitation Act of 1973, as amended; (iii) the Americans with Disabilities Act of 1990 and ORS 659A.142, as

amended; (iv) Executive Order 11246, as amended; (v) the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health (HITECH) Act portion of the American Recovery and Reinvestment Act of 2009 (ARRA), including the Privacy and Security Rules found at 45 CFR Parts 160 and 164, as the law and its implementing regulations may be updated from time to time; (vi) the Age Discrimination in Employment Act of 1967, as amended, and the Age Discrimination Act of 1975, as amended; (vii) the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended; (viii) Section 188 of the Workforce Investment Act (WIA) of 1998, as amended; (ix) ORS Chapter 659, as amended; (x) all regulations and administrative rules established pursuant to the foregoing laws; and (xi) all other applicable requirements of federal and state civil rights and rehabilitation statutes, rules and regulations. These laws, regulations and executive orders are incorporated by reference herein to the extent that they are applicable to the Contract and required by law to be so incorporated. Client's performance under the Contract is conditioned upon Consultant's compliance with the provisions of ORS 279B.220, 279B.225, 279B.230, 279B.235 and 279B.270 which are incorporated by reference herein. Consultant shall, to the maximum extent economically feasible in the performance of this Contract, use recycled paper (as defined in ORS 279A.010(1)(gg)), recycled PETE products (as defined in ORS 279A.010(1)(hh)), and other recycled products (as "recycled product" is defined in ORS 279A.010(1)(ii)).

**15.3. Compliance with Oregon Tax Laws**.

15.3.1. Consultant shall, throughout the duration of this Contract, comply with all tax laws of this state and all applicable tax laws of any political subdivision of this state. For the purposes of this section, "tax laws" includes the tax laws described in Section 8.1.5.1 through 8.1.5.4.

15.3.2. Any violation of Section 15.3.1 constitutes a material breach of this Contract. Further, any violation of Consultant's warranty in Section 8.1.5 of this Contract that Consultant has complied with the tax laws of this state and the applicable tax laws of any political subdivision of this state also constitutes a material breach of this Contract. Any violation entitles Client to terminate this Contract, to pursue and recover any and all damages that arise from the breach and the termination of this Contract, and to pursue any or all of the remedies available under this Contract, at law, or in equity, including but not limited to:

15.3.2.1. Termination of this Contract;

15.3.2.2. Exercise of the right of setoff, or garnishment if applicable, and withholding of amounts otherwise due and owing to Consultant without penalty; and

15.3.2.3. Initiation of an action or proceeding for damages, specific performance, declaratory or injunctive relief. Client is entitled to recover any and all damages suffered as the result of Consultant's breach of this Contract, including but not limited to direct, indirect, incidental and consequential damages, costs of cure, and costs incurred in securing replacement Services.

15.3.3. These remedies are cumulative to the extent the remedies are not inconsistent, and Client may pursue any remedy or remedies singly, collectively, successively, or in any order whatsoever.

15.4. **Compliance with Federal Law**. Consultant shall comply with all applicable federal laws.

16. **Governing Law; Venue and Jurisdiction.**

16.1. **Governing Law**. This Contract is governed by and construed in accordance with the laws of the State of Oregon without regard to principles of conflicts of law.

16.2. **Venue and Jurisdiction**. Any claim, action, suit or proceeding between Client (or any other agency or department of the State of Oregon) and Consultant that arises from or relates to this Contract must be brought and conducted solely and exclusively within the Circuit Court of Marion County for the State of Oregon. CONSULTANT, BY EXECUTION OF THIS CONTRACT, HEREBY CONSENTS TO THE IN PERSONAM JURISDICTION OF SAID COURTS. In no event may this section be construed as (i) a waiver by the State of Oregon of any form of defense or immunity, whether it is sovereign immunity, governmental immunity, immunity based on the Eleventh Amendment to the Constitution of the United States or otherwise, from any claim, action, suit or proceeding, or (ii) consent by the State of Oregon to the jurisdiction of any court.

17. **Miscellaneous Provisions.**

17.1. **Records Maintenance; Access**. Consultant shall maintain all financial records relating to this Contract in accordance with generally accepted accounting principles. In addition, Consultant shall maintain any other records, books, documents, papers, plans, records of shipments and payments and writings of Consultant, whether in paper, electronic or other form, that are pertinent to this Contract ("Records") in such a manner as to clearly document Consultant's performance. Consultant acknowledges and agrees that Client and the Oregon Secretary of State's Office and their duly authorized representatives will have access to such financial records and other Records that are pertinent to this Contract, whether in paper, electronic or other form, to perform examinations and audits and make excerpts and transcripts. Consultant shall retain and keep accessible all such financial records and other Records for a minimum of 6 years, or such longer period as may be required by applicable law, following final payment and termination of this Contract, or until the conclusion of any audit, controversy or litigation arising out of or related to this Contract, whichever date is later.

17.2. **Foreign Contractor**. If Consultant is not domiciled in or registered to do business in the State of Oregon, Consultant shall promptly provide to the Oregon Department of Revenue and the Secretary of State Corporation Division all information required by those agencies relative to this Contract. Consultant shall demonstrate its legal capacity to perform the Services under this Contract in the State of Oregon prior to entering into this Contract.

17.3. **Force Majeure**. Neither Client nor Consultant may be held responsible for delay or default caused by fire, riot, acts of God, terrorist acts, or other acts of political sabotage, or war where such cause was beyond the reasonable control of Client or Consultant, respectively. Consultant shall, however, make all reasonable efforts to remove or eliminate such a cause of delay or default and shall, upon the cessation of the cause, diligently pursue performance of its obligations under this Contract.

17.4. **Survival.** All rights and obligations cease upon termination or expiration of this Contract, except for the rights and obligations and declarations which expressly or by their nature survive termination of this Contract, including without limitation this Section 17.4, and provisions

regarding Contract definitions, warranties and liabilities, independent contractor status and taxes and withholding, maximum compensation, Consultant's duties of confidentiality, Consultant's indemnity, ownership and license of intellectual property and Deliverables, confidentiality and non-disclosure, Consultant's representations and warranties, control of defense and settlement, remedies, return of Client property, dispute resolution, order of precedence, maintenance and access to records, notices, severability, successors and assigns, third party beneficiaries, waiver, headings, and integration.

**17.5.** **Time is of the Essence**. Consultant agrees that time is of the essence under this Contract for performance of Services or other actions for which a deadline or time for performance is specified in this Contract and for Deliverables for which Client has notified Consultant of a delivery date or time for completion.

**17.6.** **Notice.** Except as otherwise expressly provided in this Contract, any notices to be given hereunder must be given in writing by email, personal delivery, facsimile, or mailing the same, postage prepaid, to Consultant or Client at the email address, postal address or telephone number set forth in this Contract, or to such other addresses or numbers as either party may indicate pursuant to this Section 17.6. Any communication or notice so addressed and mailed is effective five business days after mailing. Any communication or notice delivered by facsimile is effective on the day the transmitting machine generates a receipt of the successful transmission, if transmission was during normal business hours, or on the next business day, if transmission was outside normal business hours of the recipient. To be effective against Client, any notice transmitted by facsimile must be confirmed by telephone notice to Client's Contract Administrator. Any communication or notice given by personal delivery is effective when actually delivered. Any notice given by email is effective when the sender receives confirmation of delivery, either by return email, or by demonstrating through other technological means that the email has been delivered to the intended email address.

**17.7.** **No Third Party Beneficiaries**. Client and Consultant are the only parties to this Contract and are the only parties entitled to enforce the terms of this Contract. Nothing in this Contract gives, is intended to give, or may be construed to give or provide any benefit or right, whether directly, indirectly or otherwise, to third persons unless such third persons are individually identified by name herein and expressly described as intended beneficiaries of the terms of this Contract.

**17.8.** **Severability**. The parties agree that if any term or provision of this Contract is declared by a court of competent jurisdiction to be illegal or otherwise invalid, the validity of the remaining terms and provisions will not be affected, and the rights and obligations of the parties will be construed and enforced as if the Contract did not contain the particular term or provision held to be invalid.

**17.9.** **Merger Clause; Waiver**. This Contract and attached exhibits constitute the entire agreement between the parties on the subject matter hereof. There are no understandings, agreements, or representations, oral or written, not specified herein regarding this Contract. No waiver, consent, modification or change of terms of this Contract will bind the parties unless in writing and signed by both parties and all necessary State approvals have been obtained. Such waiver, consent, modification or change, if made, will be effective only in the specific instance and for the specific purpose given. The failure of Client to enforce any provision of this Contract

in one instance will not constitute a waiver by Client of its right to enforce that or any other provision.

**17.10. Amendments**. No amendment to this Contract is effective unless it is in writing signed by the parties, and has been approved as required by applicable law.

**17.11. Counterparts**. This Contract may be executed in several counterparts, all of which when taken together constitute one agreement binding on all parties, notwithstanding that all parties are not signatories to the same counterpart. Each copy of the Contract so executed constitutes an original.

**17.12. Effect of Captions.** Captions of the paragraphs of this Contract are for convenience and reference only. The words contained in the captions shall be in no way be held to explain, modify, or aid in the interpretation, construction, or meaning of the provisions of this Contract.

**17.13. Further Assurances**. Consultant and Client agree to execute such additional documents as may be reasonable and necessary to carry out the provisions of this Contract.

**17.14. Oregon False Claims Act.** Consultant acknowledges the Oregon False Claims Act, ORS 180.750 to 180.785, applies to any action by Consultant pertaining to this Contract, including the procurement process relating to this Contract, that constitutes a "claim" (as defined by ORS 180.750(1)). By its execution of this Contract, Consultant certifies the truthfulness, completeness, and accuracy of any statement or claim it has made, it makes, it may make, or causes to be made that pertains to this Contract. In addition to other penalties that may be applicable, Consultant further acknowledges that if it makes, or causes to be made, a false claim or performs a prohibited act under the Oregon False Claims Act, the Oregon Attorney General may enforce the liabilities and penalties provided by the Oregon False Claims Act against Consultant. Consultant understands and agrees that any remedy that may be available under the Oregon False Claims Act is in addition to any other remedy available to the State or Client under this Contract or any other provision of law.

**17.15. Certifications**. The individual signing this Contract on behalf of Consultant hereby:

17.15.1. Certifies and swears under penalty of perjury to the best of the individual's knowledge that: (a) Consultant is not subject to backup withholding because (i) Consultant is exempt from backup withholding, (ii) Consultant has not been notified by the IRS that Consultant is subject to backup withholding as a result of a failure to report all interest or dividends, or (iii) the IRS has notified Consultant that Consultant is no longer subject to backup withholding; (b) s/he is authorized to act on behalf of Consultant, s/he has authority and knowledge regarding Consultant's payment of taxes, and to the best of her/his knowledge, Consultant is not in violation of any Oregon tax laws, including, without limitation, those tax laws listed in ORS 305.380(4), namely ORS 320.005 to 320.150 and 403.200 to 403.250 and ORS Chapters 118, 314, 316, 317, 318, 321 and 323 and local taxes administered by the Oregon Department of Revenue under ORS 305.620; (c) Consultant is an independent contractor as defined in ORS 670.600; and (d) the supplied Consultant tax identification numbers are true and accurate;

17.15.2. Certifies that, to the best of the undersigned's knowledge, Consultant has not discriminated against and will not discriminate against any disadvantaged business

enterprise, minority-owned business, woman-owned business, business that service-disabled veteran owns or emerging small business certified under ORS 200.055 in obtaining any required subcontracts;

17.15.3. Certifies that Consultant has a written policy and practice that meets the requirements, described in ORS 279A.112, of preventing sexual harassment, sexual assault, and discrimination against employees who are members of a protected class. Consultant agrees, as a material term of the Contract, to maintain the policy and practice in force during the entire Contract term.

17.15.4. Certifies that the information provided on the attached Exhibit D, Independent Contractor Certification, is true and correct as of the Effective Date; and

17.15.5. Certifies that Consultant and Consultant's employees and agents are not included on the list titled "Specially Designated Nationals and Blocked Persons" maintained by the Office of Foreign Assets Control of the United States Department of the Treasury and currently found at http://www.treasury.gov/ofac/downloads/sdnlist.pdf.

**Meketa Investment Group, Inc.**

By: DocuSigned by: [signature] 3EF6850F845E4EB...

Name: Mika Malone

Title: Managing Principal

Date: 11/30/2020

**STATE OF OREGON ACTING BY AND THROUGH THE OREGON INVESTMENT COUNCIL**

By: DocuSigned by: Rex Kim 0561A93D9C64479...

Name: Rex Kim

Title: Chief Investment Officer

Date: 11/30/2020

Approved for Legal Sufficiency via email from D. Elott on 11/30/2020

## Exhibit A

## Statement of Work

**A.** **Consultant's Services.** The Consultant will provide expert guidance to Treasury and the OIC, as further described below. The following services (the "Services") will be requested primarily for OPERF, but also for other Investment Funds, including but not limited to the CSF, SAIF, the OSTF, and other accounts designated by Client. The Services will include, but are not limited to:

1) Recommending investment policy & asset allocation strategy (may include governance and policy reviews upon request);

2) Furnishing, as requested, quantitative and qualitative evaluations and comparisons of (i) investment managers for the Core Asset Classes (equity, fixed income and risk parity), including, without limitation, recommendations with respect to the retention, replacement and engagement of additional investment managers based on Consultant's evaluations and independent research, and (ii) the allocation of Client assets among the evaluated managers ("Core Managers"). Consultant's review of Client's investment managers shall include:

(a) a description of each manager's investment method, role in the Core Asset Class and responsibilities;

(b) long and short term objectives for performance;

(c) a statement of an appropriate risk adjusted nominal and real performance benchmark and index for each Core Asset Class and for the aggregate Core Asset Classes;

(e) reporting requirements regarding portfolio composition, turnover, yield on investment and any significant changes in personnel, ownership or control of any investment manager;

(f) criteria for compliance of the assets with the investment objectives, criteria and guidelines of the Client; and

(g) a comparison of performance of each investment manager's portfolio against the broad market or appropriate indices using performance data furnished by State Street Bank and Trust, Client's master custodian (or such other custodian as Client may from time to time designate);

3) Recommending guidelines and policy for the allocation and diversification of Client's assets among various asset classes as deemed appropriate. Formally, on a three to five-year cycle, Consultant shall perform an asset-liability study of the Oregon Public Employees Retirement Fund.

4) Furnishing Client with reports generated by Consultant's Research and Development

Department which are published from time to time with respect to new developments in United States and foreign capital markets and to investment techniques which may affect Client's investments in the Core Asset Classes. Consultant further agrees to report to the Client as necessary on all matters which represent significant changes in economic forecasts, investment outlook, industry emphasis and any other matters which may constitute or pose the possibility of significant deviations from Client's investment strategy or objectives;

5) As further specified by Client, providing quarterly reporting to Client that includes monitoring and reporting of public markets managers, portfolio and manager level analytics, performance and attribution analyses, fee analyses, and risk analyses at the asset class and portfolio level.

6) Conducting periodic consulting client conferences and client education seminars to which Client or its representatives shall be invited without additional fees.

7) As further specified by Client, conducting portfolio analytics and attribution analyses;

8) Operational support, such as performance and market value reconciliation, custody and operational review, and a custody Request for Proposals (RFP);

9) General research; and

10) Other projects as specified by Treasury staff and the Council.

**B.** **<u>Attendance at Meetings.</u>** Consultant shall:

1) Attend regular and special meetings of the Council, as requested;

2) Be available for additional meetings with Treasury staff in Treasury's offices on a reasonable as needed basis;

**C.** **<u>Client Responsibilities</u>.** To enable Consultant to perform its duties hereunder, upon the request of Consultant, Client will furnish Consultant with all financial data and other information relating to the assets and management of the assets as may be reasonably required by Consultant for the performance of Consultant's duties hereunder. To the extent that any such data or information is in the possession of any Investment Manager, Client shall direct such party to provide the requested information to Consultant. Client shall furnish Consultant with copies of policy manuals and other documents and instruments necessary or relevant to the performance of Consultant's duties hereunder.

## Exhibit B

## Required Insurance

**INSURANCE REQUIREMENTS**

Consultant shall obtain, at Consultant's expense, the insurance specified in this Exhibit A to perform under this Agreement and shall maintain it in full force and at its own expense throughout the duration of this Agreement, as required by any extended reporting period or tail coverage requirements, and all warranty periods that apply. Consultant shall obtain the following insurance from insurance companies or entities that are authorized to transact the business of insurance and issue coverage in State of Oregon and that are acceptable to Client. Coverage shall be primary and non-contributory with any other insurance and self-insurance. Consultant shall pay for all deductibles, self-insured retention and self-insurance, if any.

**WORKERS' COMPENSATION & EMPLOYERS' LIABILITY**

All employers, including Consultant, shall provide workers' compensation insurance as required by applicable workers' compensation laws for persons performing work under this Agreement including Employers' Liability Insurance with limits not less than $500,000 each incident. Consultant shall require and ensure that each of its subcontractors comply with these requirements.

**PROFESSIONAL LIABILITY**

☒ **Required by Treasury** ☐ **Not required by Treasury**

Professional Liability insurance covering any damages caused by an error, omission or any negligent acts related to the services to be provided under this Agreement in an amount not less than $ 5,000,000.00 per occurrence. Annual aggregate limit shall not be less than $5,000,000.00. If coverage is on a claims-made basis, then either an extended reporting period of not less than 24 months shall be included in the Professional Liability insurance coverage or the Consultant shall provide Tail Coverage as stated below.

**FIDUCIARY LIABILITY**

☒ **Required by Agency** ☐ **Not required by Agency**

Fiduciary Liability insurance covering breaches in fiduciary duties related to the services or fiduciary responsibility to be provided under this Agreement in an amount not less than $5,000,000.00 per occurrence. Annual aggregate limit shall not be less than $5,000,000.00. If coverage is on a claims-made basis, then either an extended reporting period of not less than 24 months shall be included in the Fiduciary Liability insurance coverage or the Consultant shall provide Tail Coverage as stated below.

**COMMERCIAL GENERAL LIABILITY**

☒ **Required by Treasury** ☐ **Not required by Treasury**

Commercial General Liability Insurance covering bodily injury, death and property damage in a form and with coverage that is satisfactory to the State. This insurance shall include personal injury liability, products and completed operations, and contractual liability

coverage. Coverage shall be written on an occurrence basis in an amount of not less than $5,000,000.00 per occurrence. Annual aggregate limit shall not be less than $5,000,000.00.

**AUTOMOBILE LIABILITY INSURANCE**

☒ **Required by Treasury** ☐ **Not required by Treasury**

Automobile Liability Insurance covering all owned, non-owned, or hired vehicles for bodily injury and property damage in amounts customary for the industry.

**ADDITIONAL INSURED**

The Commercial General Liability insurance and Automobile Liability insurance required under this Agreement shall include the State of Oregon, Client, the Office of the Oregon State Treasurer, and their officers, employees and agents as Additional Insureds but only with respect to Consultant's activities to be performed under this Agreement.

**TAIL COVERAGE**

If any of the required insurance is on a claims made basis and does not include an extended reporting period of at least 24 months, Consultant shall maintain either tail coverage or continuous claims made liability coverage, provided the effective date of the continuous claims made coverage is on or before the effective date of this Agreement, for a minimum of 24 months following the later of: (i) Consultant's completion and Treasury's acceptance of all Services required under this Agreement; or (ii) the expiration of all warranty periods provided under this Agreement.

**CERTIFICATE(S) AND PROOF OF INSURANCE**

Consultant shall provide to Treasury Certificate(s) of Insurance for all required insurance before performing any Services required under this Agreement. The Certificate(s) shall list the State of Oregon, Client, the Office of the Oregon State Treasurer, and their officers, employees and agents as a Certificate holder and as Endorsed Additional Insured, specify that Consultant shall pay for all deductibles, self-insured retention and self-insurance, if any, that all coverage shall be primary and non-contributory with any other insurance and self-insurance, and confirm that either an extended reporting period of at least 24 months is provided on all claims made policies or that tail coverage is provided. As proof of insurance, Treasury has the right to request copies of insurance policies relating to the insurance requirements in this Agreement.

**NOTICE OF CHANGE OR CANCELLATION**

The Consultant or its insurer must provide at least 30 days written notice to Treasury before cancellation of, material change to, potential exhaustion of aggregate limits of, or non-renewal of the required insurance coverage(s).

**INSURANCE REQUIREMENT REVIEW**

Consultant agrees to periodic review of insurance requirements by Treasury under this agreement and to provide updated requirements as mutually agreed upon by Consultant and Treasury.

**Exhibit C**

**Key Persons**

Allan Emkin, Managing Principal

Mika L. Malone, CAIA, Managing Principal

**Exhibit D**

**Independent Contractor Certification**

**Consultant certifies he/she meets the following standards**:

1. I am registered under ORS chapter 701 to provide labor or services for which such registration is required.

2. I have filed federal and state income tax returns in the name of my business or a business Schedule C as part of the personal income tax return, for the previous year, or expect to file federal and state income tax returns, for labor or services performed as an independent contractor in the previous year.

3. I will furnish the tools or equipment necessary for the contracted labor or services.

4. I have the authority to hire and fire employees who perform the labor or services.

5. I represent to the public that the labor or services are to be provided by my independently established business as four (4) or more of the following circumstances exist. (**Please check four or more of the following**):

____ A. The labor or services are primarily carried out at a location that is separate from my residence or is primarily carried out in a specific portion of my residence, which is set aside as the location of the business.

____ B. Commercial advertising or business cards are purchased for the business, or I have a trade association membership.

____ C. Telephone listing used for the business is separate from the personal residence listing.

____ D. Labor or services are performed only pursuant to written contracts.

____ E. Labor or services are performed for two or more different persons within a period of one year.

____ F. I assume financial responsibility for defective workmanship or for service not provided as evidenced by the ownership of performance bonds, warranties, errors and omission insurance or liability insurance relating to the labor or services to be provided.

Consultant Signature: DocuSigned by: [signature] 3EF6850F845E4EB... Date: 11/30/2020